# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

* * *

| | |
|---|---|
| Kassity Amber Higgins,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>Kilolo Kijakazi,*<br><br>　　　　　　Defendant. | Case No. 2:20-cv-00918-BNW<br><br>**ORDER** |

This case involves review of an administrative action by the Commissioner of Social Security denying *pro se* Plaintiff[1] Kassity Amber Higgins' application for disabled child's insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, respectively.[2] The Court reviewed Plaintiff's motion to remand (ECF No. 37), filed August 20, 2021, and the Commissioner's cross-motion to affirm and response to Plaintiff's motion to remand (ECF No. 38), filed September 15, 2021. For several reasons, the Court determined that no reply would be allowed.[3] *See* ECF No. 36.

The parties consented to the case being heard by a magistrate judge in accordance with 28 U.S.C. § 636(c) on June 11, 2020. ECF No. 5. This matter was then assigned to the undersigned magistrate judge for an order under 28 U.S.C. § 636(c). *Id*.

---

* Kilolo Kijakazi has been substituted for her predecessor in office, Andrew Saul, pursuant to Federal Rule of Civil Procedure 25(d).

[1] The Court will use claimant and plaintiff throughout this Order. The terms are interchangeable for the purposes of this Order.

[2] The same definition of "disability" and five-step sequential evaluation outlined below govern eligibility for disabled child's insurance benefits. *See* 42 U.S.C. § 423(d); 20 C.F.R. § 404.1520(a)(1)-(2). Additionally, to qualify for disabled child's insurance benefits, several criteria must be met. 20 C.F.R. §§ 404.350(a)(1)-(5). As relevant here, if the plaintiff is over 18, the claimant must "have a disability that began before" she turned 22. 20 C.F.R. § 404.350(a)(5).

[3] These reasons include (1) the Court granting Plaintiff multiple extensions for filing her motion to remand, including after she failed to meet the then-most recent deadline, and (2) Plaintiff's initial motion to remand failed to cite to any legal authority or the administrative record.

## I. BACKGROUND

### 1. Procedural History

On June 17, 2016, Plaintiff applied for disabled child's insurance benefits and supplemental security income under Titles II and XVI of the Act, respectively, alleging an onset date of January 1, 2014. ECF No. 21-1[4] at 209–26. Her claim was denied initially and on reconsideration. *Id*. at 127–31; 134–36. A hearing was held before an Administrative Law Judge ("ALJ") on February 22, 2019.[5] *Id*. at 37–56. On April 22, 2019, ALJ Norman L. Bennett issued a decision finding that Plaintiff was not disabled. ECF No. 21-1 at 17–30. The ALJ's decision became the Commissioner's final decision when the Appeals Council denied review on March 27, 2020. *Id*. at 7–11. Plaintiff, on May 20, 2020, timely commenced this action for judicial review under 42 U.S.C. § 405(g). *See* IFP App. (ECF No. 1).

## II. DISCUSSION

### 1. Standard of Review

Administrative decisions in Social Security disability benefits cases are reviewed under 42 U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which [s]he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides." The court may enter "upon the pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. *See id*.; *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005). However, the Commissioner's findings may be set aside if they are based on legal error or not supported by substantial evidence.

---

[4] ECF No. 21 refers to the Administrative Record in this matter which, due to COVID-19, was electronically filed. (Notice of Electronic Filing (ECF No. 21).) All citations to the Administrative Record will use the CM/ECF page numbers.

[5] A hearing was first held on October 19, 2018, but it was continued to allow Plaintiff to find representation. ECF No. 21-1 at 57–69.

*See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). In determining whether the Commissioner's findings are supported by substantial evidence, the court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

Under the substantial evidence test, findings must be upheld if supported by inferences reasonably drawn from the record. *Batson v. Commissioner*, 359 F.3d 1190, 1193 (9th Cir. 2004). When the evidence will support more than one rational interpretation, the court must defer to the Commissioner's interpretation. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Consequently, the issue before the court is not whether the Commissioner could reasonably have reached a different conclusion, but whether the final decision is supported by substantial evidence. It is incumbent on the ALJ to make specific findings so that the court does not speculate as to the basis of the findings when determining if the Commissioner's decision is supported by substantial evidence. Mere cursory findings of fact without explicit statements as to what portions of the evidence were accepted or rejected are not sufficient. *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981). The ALJ's findings "should be as comprehensive and analytical as feasible, and where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based." *Id.*

### 2. Disability Evaluation Process

The individual seeking disability benefits has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous

period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). More specifically, the individual must provide "specific medical evidence" in support of her claim for disability. 20 C.F.R. § 404.1514. If the individual establishes an inability to perform her prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d at 721.

The ALJ follows a five-step sequential evaluation process in determining whether an individual is disabled.[6] *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If at any step the ALJ determines that he can make a finding of disability or non-disability, a determination will be made, and no further evaluation is required. *See* 20 C.F.R. § 404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). Step one requires the ALJ to determine whether the individual is engaged in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(b). SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities usually for pay or profit. *Id.* § 404.1572(a)–(b). If the individual is engaged in SGA, then a finding of not disabled is made. If the individual is not engaged in SGA, then the analysis proceeds to step two.

Step two addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits him from performing basic work activities. *Id.* § 404.1520(c). An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work. *Id.* § 404.1521; *see also* Social Security Rulings ("SSRs") 85-28, 96-3p, and 96-4p.[7] If the individual does not have a severe medically determinable impairment or combination of

---

[6] As noted previously, the ALJ follows the same five-step sequential evaluation process for determining whether a plaintiff qualifies for disabled child's insurance benefits. But before beginning the process, as relevant here, the ALJ must determine whether the plaintiff, if over 18, had a disability that began before she turned 22. 20 C.F.R. § 404.350(a)(5).

[7] SSRs constitute the SSA's official interpretation of the statute and regulations. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009); *see also* 20 C.F.R. § 402.35(b)(1). They are "entitled to 'some deference' as long as they are consistent with the Social Security Act and regulations." *Bray*, 554 F.3d at 1224 (citations omitted) (finding that the ALJ erred in disregarding SSR 82-41).

impairments, then a finding of not disabled is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to step three.

Step three requires the ALJ to determine whether the individual's impairments or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If the individual's impairment or combination of impairments meets or equals the criteria of a listing and the duration requirement (20 C.F.R. § 404.1509), then a finding of disabled is made. 20 C.F.R. § 404.1520(h). If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to step four.

But before moving to step four, the ALJ must first determine the individual's residual functional capacity ("RFC"), which is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. *See* 20 C.F.R. § 404.1520(e); *see also* SSR 96-8p. In making this finding, the ALJ must consider all the relevant evidence, such as all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1529; *see also* SSRs 96-4p and 96-7p. To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

Step four requires the ALJ to determine whether the individual has the RFC to perform her past relevant work ("PRW"). 20 C.F.R. § 404.1520(f). PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last 15 years. In addition, the work must have lasted long enough for the individual to learn the job and performed a SGA. 20 C.F.R. §§ 404.1560(b) and 404.1565. If the individual has the

RFC to perform her past work, then a finding of not disabled is made. If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to step five.

The fifth and final step requires the ALJ to determine whether the individual is able to do any other work considering her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). If she is able to do other work, then a finding of not disabled is made. Although the individual generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner. The Commissioner is responsible for providing evidence demonstrating that other work exists in significant numbers in the economy that the individual can do. *Yuckert*, 482 U.S. at 141–42.

Here, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520 and 416.920. ECF No. 21-1 at 22–30. But before doing so, he first determined that Plaintiff had not reached the age of 22 prior to January 1, 2014, the alleged onset disability date.[8] *Id*. at 22.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of January 1, 2014. *Id*.

At step two, the ALJ found that Plaintiff had the following medically determinable "severe" impairments: migraine headaches, vertigo, dyspnea, hypotension, scoliosis, status post colectomy, depressive disorder, and anxiety disorder. *Id*. He further found that Plaintiff's avoidant personality disorder was non-severe. *Id*. at 23.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*.

Before moving to step four, the ALJ also found that Plaintiff had the RFC to perform sedentary work with the following exceptions: She can sit for 6 hours; she can stand/walk for 2 hours; she can perform work with simple, repetitive tasks with a reasoning level of two-to-three; she can lift/carry 10 pounds occasionally and 5 pounds frequently; she can occasionally climb

---

[8] This initial analysis is necessary to determine whether Plaintiff qualified for disabled child's insurance benefits. *See* 20 C.F.R. § 404.350(a)(5).

ramps and stairs; she can occasionally stoop, kneel, crouch, and crawl; she cannot climb ladders, ropes, or scaffolds; and she must avoid work at heights or around dangerous moving machinery. *Id*. at 25.

At step four, the ALJ found that Plaintiff has no past relevant work. *Id*. at 28.

At step five, the ALJ considered Plaintiff's age, education, work experience, and RFC and found that there are jobs that exist in significant numbers in the national economy that she can perform. *Id*. at 267–68. Specifically, he found that Plaintiff can work as a document preparer, lens inserter, or bench assembler. *Id*. at 29. The ALJ then concluded that Plaintiff was not under a disability at any time from January 1, 2014 through the date of his decision. *Id*. at 30.

**3.   Analysis**

Plaintiff's motion to remand includes a section-by-section analysis of the ALJ's decision, noting where she disagrees and finds error with the ALJ's findings. ECF No. 37. The Court understands that Plaintiff made three legal arguments: (1) The ALJ erred by not finding Plaintiff's other mental health impairments to be severe, (2) the ALJ erred by not finding that Plaintiff's impairments met Listings 12.04 and 12.06, and (3) the ALJ erred because his non-disability determination is not supported by substantial evidence. *Id*.

**a. Whether the ALJ erred by not identifying Plaintiff's avoidant personality disorder, agoraphobia with panic disorder, and recurrent major depressive disorder diagnoses as "severe" impairments**

**i. The ALJ's decision**

At step two, the ALJ found that Plaintiff had several medically determinable "severe" impairments (i.e., migraine headaches, vertigo, dyspnea, hypotension, scoliosis, status post colectomy, depressive disorder, and anxiety disorder), but her avoidant personality disorder was non-severe. ECF No. 21-1 at 22–23. He reasoned that although Plaintiff was diagnosed with the condition in December 2016, her ability to "engage with providers with no issues[,]" her ability to live with her mother and grandmother with "no reported issues[,]" her ability to "interac[t] with her friends on the internet[,]" and her "long-term friendships" support the finding that this impairment is not severe. *Id*. The ALJ then concluded that Plaintiff's avoidant personality

disorder is non-severe because "it presents only slight abnormalities and does not have more than a minimal effect on the [Plaintiff's] ability to do basic mental work activities." *Id*.

The ALJ did not discuss Plaintiff's agoraphobia with panic disorder diagnosis. *See* ECF No. 21-1 at 22–23.

Finally, the ALJ found that Plaintiff's depressive disorder was severe but did not refer to it as "recurrent major depressive disorder." *Id*. at 22.

### ii. The parties' arguments

Plaintiff argues that the ALJ erred by not identifying her avoidant personality disorder diagnosis as severe. ECF No. 21-1 at 6. According to Plaintiff, in one instance, the ALJ's reasoning for discounting her avoidant personality disorder "contradicts" his findings and, in other instances, is not supported by the record or medical opinion. *Id*. at 6–7.

Plaintiff further argues that the ALJ erred by not addressing her agoraphobia with panic disorder diagnosis or the severe recurrent major depressive disorder. *Id*. at 6.

The Commissioner argues that the ALJ did not err in finding that Plaintiff's avoidant personality disorder diagnosis was not severe. ECF No. 38 at 13. According to the Commissioner, it is the ALJ—not Plaintiff's physician(s)—who determines whether an impairment rises to the level of severe. *Id*. She also asserts that a diagnosis, on its own, is not sufficient to establish severity. *Id*.

Next, the Commissioner argues that even if the ALJ erred with respect to his step-two analysis, the error would be harmless because he incorporated the impairment in the RFC analysis. *Id*. at 13–15. Of note, the Commissioner does not respond to Plaintiff's argument that the ALJ erred at step two by not discussing her agoraphobic with panic disorder or recurrent major depressive disorder diagnoses.

### iii. Whether the ALJ properly discounted Plaintiff's other mental health impairments as non-severe

Step two of the five-step sequential evaluation process establishes a *de minimis* threshold for determining whether a medically determinable impairment or combination of impairments is severe. *Smolen*, 80 F.3d at 1290.

An ALJ may find a medically determinable impairment or combination of impairments is non-severe "'only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's [physical or mental] ability to work.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting *Smolen*, 80 F.3d at 1290). Basic work activities include physical functions like walking, standing, and carrying as well as the capacity to see, hear, speak, understand, remember simple instructions, respond appropriately to work situations, and deal with changes in a routine work setting. *Tagger v. Astrue*, 536 F. Supp. 2d 1170, 1179 (C.D. Cal. 2008) (citing 20 C.F.R. § 416.921(b)). The plaintiff has the burden of proving that her "impairments or their symptoms affect h[er] ability to perform basic work activities." *Edlund v. Massanari*, 253 F.3d 1152, 1159–60 (9th Cir. 2001).

Here, the ALJ found that Plaintiff's avoidant personality disorder is non-severe. ECF No. 21-1 at 23. He noted that Plaintiff was diagnosed with the disorder in December 2016 but, despite this diagnosis, "the record shows she is able to engage with providers with no issues" and maintain various online and in-person relationships. *Id*. He then concluded that the avoidant personality disorder "presents only slight abnormalities and does not have more than a minimal effect on the claimant's ability to do basic mental work activities." *Id*.

Plaintiff argues that the record "contradicts" the ALJ's finding that she can "engage with providers with no issues[,]" citing to a progress note where Plaintiff's licensed social worker Sunny Tice wrote, "Extreme restraint to override her fear of other people and her own chastisement of Self." ECF No. 37 at 6. It is unclear to the Court how this statement speaks to Plaintiff's (in)ability to engage with her medical providers. Nonetheless, in these same progress notes, Ms. Tice noted that Plaintiff was "engaging[.]" *See* ECF No. 21-1 at 496 (March 8, 2017 session), 497 (February 3, 2017 session), 498 (December 6, 2016 session), 499 (November 23, 2016 session), 500 (November 9, 2016 session), and 501 (October 20, 2016 session). She also noted that "[i]t is encouraging that [Plaintiff] feels safe and comfortable with this therapist and continues to come back to therapy as she can afford it." *Id*. at 497. Based on these progress notes, it does not appear that the record contradicts the ALJ's finding with respect to Plaintiff's ability to engage with her medical providers.

Plaintiff makes additional arguments as to why the ALJ erred at step two (e.g., the ALJ should not have discredited her avoidant personality disorder simply because of her willingness to seek medical help; the ALJ failed to address Plaintiff's agoraphobia with panic disorder or severe recurrent major depressive disorder). But even assuming that the ALJ erred, his error would be harmless.

First, no medical provider, including Ms. Tice or physician assistant Marlina Robinson,[9] required or recommended any work-related restrictions due to Plaintiff's mental health impairments. *See* ECF No. 21-1, 21-2, and 21-3.

Second, Ms. Robinson and Ms. Tice were the only medical providers who diagnosed Plaintiff with these disorders and did so on only one or two occasions, respectively. *See* ECF No. 21-1 at 486–87 (Ms. Robinson diagnosed Plaintiff with agoraphobia with panic disorder) and 497–98 (Ms. Tice diagnosed Plaintiff with avoidant personality disorder). Related, only Dr. Ute Geeb, M.D. diagnosed Plaintiff with recurrent major depressive disorder and noted in October 2018 that this impairment was "much better" and that Plaintiff will continue on her medication, with counseling being an option. *Id*. at 658.

Third, the ALJ still found that Plaintiff suffered from a "mild limitation" with respect to interacting with others. ECF No. 21-1 at 23.

Finally, the ALJ considered Plaintiff's mental health impairments in determining her residual functional capacity ("RFC").[10] *See Lewis v. Astrue*, 498 F.3d 909, 911 (finding step-two error harmless when the ALJ considered the impairment at step four); Social Security Ruling ("SSR") 96-8p ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"); *Buck v.*

---

[9] On October 19, 2016, Ms. Tice referred Plaintiff to Ms. Robinson for "medication evaluation." ECF No. 21-1 at 502–03. After an initial visit with Plaintiff a few days later, Ms. Robinson assessed that Plaintiff suffers from generalized anxiety disorder, agoraphobia with panic disorder, and orthostatic hypotension. ECF No. 21-1 at 487. Aside from this progress note, the record is void of any discussion about Plaintiff's agoraphobia with panic disorder. Of note, Ms. Robinson e-signed her progress note as Marlina Robinson, PAC. *Id*. The Court understands PAC to mean that Ms. Robinson is a certified physician's assistant.

[10] The ALJ did consider Plaintiff's mental health impairments in determining her RFC and concluded that the medical record "indicate[d] her symptoms are not as severe or limiting as alleged." ECF No. 21-1 at 27. The ALJ further found that, although Plaintiff does suffer from mental health impairments, "the record does not establish limitations that would prevent all work." *Id*. at 28.

*Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (because the ALJ considers all impairments, both severe and non-severe, in determining a plaintiff's residual functional capacity, "the [residual functional capacity] therefore *should* be exactly the same regardless of whether certain impairments are considered 'severe' or not") (emphasis original).

Accordingly, even assuming that the ALJ erred at step two, his error was harmless because (1) he analyzed the mental health impairments in determining Plaintiff's RFC, and (2) Plaintiff has not shown how the ALJ's consideration of the record would have been different if he had found that her other mental health impairments were severe. *See Burch*, 400 F.3d at 682 (noting that an error at step two may be harmless where step two was otherwise decided in the plaintiff's favor because the sequential evaluation process continued); *see also Jasmin V. v. Comm'r of Soc. Sec.*, No. 19-5066-JLR-MLP, 2019 WL 3893052, at *5 (W.D. Wash. July 31, 2019), *report and recommendation adopted*, No. C19-5066JLR, 2019 WL 3891789 (W.D. Wash. Aug. 19, 2019) (finding that the ALJ's step-two finding that the plaintiff's ankle condition was not severe, even if legal error, was harmless because the ALJ proceeded beyond step two in the five-step sequential evaluation process and because Plaintiff had not shown that the ALJ's findings would have changed if the ankle condition were deemed severe).

**b. Whether the ALJ erred in finding that Plaintiff's impairments do not meet or medically equal the severity of Listings 12.04 and 12.06**

### i. The ALJ's decision

The ALJ found that the "severity of [Plaintiff's] mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 and 12.06." ECF No. 21-1 at 23. Specifically, he found that Plaintiff's mental health impairments did not meet the Paragraph B criteria because she experienced no limitations in two of the four categories (i.e., understanding, remembering, or applying information and adapting or managing oneself) and only mild and moderate limitations in the other two categories (i.e., interacting with others and concentrating, persisting, or maintaining pace, respectively). *Id.* at 23–24. Further, the ALJ noted that "[n]o treating or examining physician has suggested the presence of any impairment or combination of impairments of listing level severity." *Id.* at 23.

The ALJ also found that Plaintiff's impairments did not meet the Paragraph C criteria, explaining that (1) the "record does not establish that the claimant has only . . . a minimal capacity to adapt to changes in the claimant's environment or to demands that are not already part of the claimant's daily life[;]" (2) Plaintiff has "no residual disease process resulting in such marginal adjustment that an increase in mental demands or change in environment would be predicted to cause [her] to decompensate[;]" and (3) Plaintiff has no "current history of one or more years of an inability to function outside a highly-supportive living arrangement with an indication of continued need for such an arrangement." *Id*. at 24.

### ii. The parties' arguments

Plaintiff argues that the ALJ erred at step three of the five-step sequential evaluation process because she meets the criteria for Listings 12.04 (depressive, bipolar and related disorders) and 12.06 (anxiety and obsessive-compulsive disorders). ECF No. 37 at 7.

According to Plaintiff, she meets Listing 12.04 because of the "extensive commentary and diagnoses from Oasis Counseling (Ex. 12F, Pg. 1-14), additional assessment and diagnoses from Psy. Marlina Robinson (Ex. 11F, Pg. 1-2), the claimant's primary physician's observance of worsening depression, (Ex. 13F, Pg. 2) 12/03/2015 to 1/22/2018 (Ex. 13F, Pg. 69-70), and the consistency of symptoms as they were reported to and by various providers." *Id*.

Additionally, Plaintiff argues that she meets Listing 12.06 because "Psy. Marlina Robinson and Oasis Counseling's reports elaborate on the severity of the claimant's social anxiety and avoidance of social environments." *Id*. Plaintiff further adds that the fact that she remained unemployed since she resigned from her position in January 2014, her avoidance of public transportation, and her need to transfer from a traditional high school to an "individualized school program" further support the fact that she meets Listing 12.06. *Id*.

The Commissioner responds that Plaintiff failed to meet her burden in showing that her impairments "meet *all* of the specified medical criteria" of Listing 12.04 or 12.06. ECF No. 38 at 16 (emphasis in original). She further argues that Plaintiff's challenge to the ALJ's step-three findings is an attempt to reinterpret the evidence. *Id*. at 17. Finally, the Commissioner argues that

Plaintiff waived the right to challenge whether her impairments *equal*—rather than just *meet*—either Listing. *Id*. at 15.

### iii. Whether the ALJ erred in finding that Plaintiff's impairments did not meet or equal Listings 12.04 and 12.06

At step three, the ALJ determines whether a plaintiff's impairments, individually or in combination, meet or equal a Listing. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

An impairment *meets* a Listing if it meets all of the criteria of a listed impairment. *See* 20 C.F.R. §§ 404.1525(d), 416.925(d); *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). An impairment *equals* a Listing if the medical findings are equal in severity and duration to all the criteria of a listed impairment. *See Sullivan*, 493 U.S. at 531.

"Listed impairments are purposefully set at a high level of severity because 'the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary.'" *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013) (citing *Sullivan*, 493 U.S. at 532). Put another way, a plaintiff must meet strict standards to meet or equal a Listing because doing so will result in a finding of disability. *See id*.; 20 C.F.R. §§ 416.920(a)(4)(iii), 404.1520(a)(4)(iii).

"If a [plaintiff] suffers from multiple impairments and none of them individually meets or equals a listed impairment, the collective symptoms, signs and laboratory findings of all of the [plaintiff's] impairments will be evaluated to determine whether they meet or equal the characteristics of any relevant listed impairment." *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). However, "'[m]edical equivalence must be based on medical findings[,]'" and "[a] generalized assertion of functional problems is not enough to establish disability at step three." *Id.* at 1100 (quoting 20 C.F.R. § 404.1526); 20 C.F.R. § 416.926(a). Additionally, an impairment or combination of impairments that manifests only some of the criteria, no matter how severely, does not qualify. *Sullivan*, 493 U.S. at 530

"An ALJ must evaluate the relevant evidence before concluding that a [plaintiff's] impairments do not meet or equal a listed impairment." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). The ALJ is not, however, required to discuss the evidence supporting the step three

determination in a "Step Three Findings" section itself. *Id.* at 513. Instead, the ALJ can meet this requirement by discussing the relevant evidence supporting the step three determination anywhere in the decision. *Id.* Moreover, the plaintiff has the burden of proving and setting forth the evidence that her impairments meet or equal a Listing. *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007); *Burch*, 400 F.3d at 683.

Here, to meet the mental disorders listings at issue (i.e., Listings 12.04 and 12.06), Plaintiff must demonstrate that she fulfills the requirements of both paragraphs A and B or both paragraphs A and C:

> Paragraph A of each listing . . . includes the medical criteria that must be present in [the plaintiff's] medical evidence. Paragraph B of each listing . . . provides the functional criteria [assessed], in conjunction with a rating scale . . . to evaluate how [the plaintiff's] mental disorder limits [her] functioning [in four areas (i.e., the ability to (1) understand, remember or apply information; (2) interact with others; (3) concentrate, persist or maintain pace; and (4) adapt or manage oneself)] . . . . To satisfy the paragraph B criteria, [a plaintiff's] mental disorder must result in "extreme" limitation of one, or "marked" limitation of two, of the four areas of mental functioning . . . . Paragraph C of Listings . . . 12.04 [and] 12.06 provides the criteria [used] to evaluate "serious and persistent mental disorders" [i.e.,] when there is a medically documented history of the existence of the mental disorder . . . over a period of at least 2 years . . . and [1] [a plaintiff relies] on an ongoing basis, upon medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s), to diminish the symptoms and signs of [the] mental disorder[; and 2] when the evidence shows that, despite [a plaintiff's] diminished symptoms and signs, [the plaintiff has] achieved only marginal adjustment. "Marginal adjustment" means that adaptation to the requirements of daily life is fragile; that is, [the plaintiff has] minimal capacity to adapt to changes in [the plaintiff's] environment or to demands that are not already part of [the plaintiff's] daily life.

20 C.F.R. § Pt. 404, Subpt. P, App. 1.

Plaintiff has not met her burden. While the Court empathizes with the facts that Plaintiff has suffered physically and psychologically and is representing herself in this case, her arguments claiming that the record supports finding her mental health impairments meet the criteria for Listings 12.04 and 12.06 are unsuccessful. This is so for several reasons.

First, Plaintiff does not connect how, for example, her loss of appetite, worsening depression, and avoidance of public transportation show that her impairments meet or equal the severity of the Listings. *See* ECF No. 37 at 7. As noted above, "[l]isted impairments are

purposefully set at a high level of severity because 'the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary.'" *Kennedy*, 738 F.3d at 1176 (citing *Sullivan*, 493 U.S. at 532).

Second, Plaintiff's arguments rely on an interpretation of the record that is contrary to the ALJ's interpretation. But this Court cannot make findings of fact. *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). Rather, the Court's role is limited to reviewing the Commissioner's decision for a lack of substantial evidence or legal error. *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). And, here, the ALJ's decision is supported by substantial evidence and free from legal error. For example, the record shows that many of Plaintiff's neurological and mental status examinations were normal, thus supporting the finding that her impairments do not meet either Listing. *See, e.g.,* ECF No. 21-1 at 413 (November 9, 2015 progress note indicating that Plaintiff's complete neurologic workup provided "unremarkable" studies); ECF No. 21-2 at 54-55, 65 (December 19, 2018 progress note indicating "normal" neurological exams); ECF No. 21-2 at 78 (February 13, 2019 progress note indicating various "normal" and "negative" neurological exams, though diagnosing Plaintiff with "benign positional vertigo to the right").

Of note, while Plaintiff's argument show that a reasonable interpretation of the medical evidence may[11] support a finding of disability at step three, a district court may not substitute its judgment for that of the Commissioner's. *Edlund*, 253 F.3d at 1156. This is to mean that if the evidence in the record "is susceptible to more than one rational interpretation, [the reviewing court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

---

[11] The Court uses "may" because the record does not clearly support that Plaintiff's impairments, individually or collectively, meet or equal Listing 12.04 or 12.06. This is because most of the discussions regarding Plaintiff's mental health impairments are void of functional limitations and, instead, are limited to diagnoses, recommendations to take medication or attend counseling, or subjective statements. Additionally, while Plaintiff submitted additional evidence to the Court, including her high school transcripts and medical records from 2020 and 2021, these records were not before the ALJ and, with respect to the medical records, they did not exist prior to the ALJ's decision in 2019. *See* ECF No. 37 at 15–22; ECF No. 37-1 at 1–30. It also does not appear that these records were provided to the Appeals Council. *See* ECF No. 21-1 at 7–10. That said, while the medical records indicate that Plaintiff continues to suffer from depression and anxiety, the ALJ did have records relating to these impairments at the time of the decision. It, therefore, does not appear to this Court that "there is a 'reasonable possibility' that the new evidence would have changed the outcome of the administrative hearing." *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001) (citation omitted).

1    Finally, the Commissioner argues that Plaintiff, by not arguing the distinction between
2  "meeting" and "equaling," has waived her right to argue that her impairments equal Listings
3  12.04 and 12.06. ECF No. 38 at 15. It is the Commissioner's position that Plaintiff only argues
4  that her impairments *meet* the Listings. *Id*. But even liberally construing Plaintiff's arguments to
5  mean that her impairments meet *and* equal the Listings, Plaintiff has not met her burden. This is
6  because she heavily relies on subjective statements made to her medical providers. *See* ECF No.
7  37 at 7. But, under the Regulations, "'[m]edical equivalence must be based on medical findings,'"
8  and a "generalized assertion of functional problems is not enough to establish disability at step
9  three." *Tackett*, 180 F.3d at 1100 (quoting 20 C.F.R. § 404.1526).

### c. Whether substantial evidence supports the ALJ's non-disability finding

Throughout her motion to remand, Plaintiff argues that the ALJ mischaracterized or misinterpreted the record. *See, e.g.,* ECF No. 37 at 14–15.

The Court reviewed the entire record and finds that substantial evidence supports the ALJ's conclusion that Plaintiff is not disabled. Significantly, no treating physician (or other medical provider) ever opined Plaintiff is disabled from all work or even that Plaintiff had work-related restrictions due to either her physical or mental health impairments. *See Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993); *Curry v. Sullivan*, 925 F.2d 1127, 1130 n.1 (9th Cir. 1990). Additionally, the vocational expert testified that a person with the residual functional capacity the ALJ found to exist could perform certain sedentary jobs existing in significant numbers in the national economy.

//
//
//
//
//
//
//
//

### III. CONCLUSION AND ORDER

Accordingly, **IT IS HEREBY ORDERED** that Plaintiff's motion to remand (ECF No. 37) is DENIED.

**IT IS FURTHER ORDERED** that the Commissioner's cross-motion to affirm and response to Plaintiff's motion to remand (ECF No. 38) is GRANTED.

**IT IS FURTHER ORDERED** that the Clerk of Court is directed to close this case.

DATED: September 29, 2021

BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE